# **EXHIBIT N**

Department of Health and Human Services
Office of the Secretary

18-100 UF

## OFFICE OF MEDICARE HEARINGS AND APPEALS

Irvine Field Office
19 Technology Drive, Suite 200
Irvine, CA 92618
949-788-8000 (Main)
949-788-3693 (ALJ Kelton Team)
949-788-2780 (FAX)
866-495-7414 (Toll Free)

Date: JUN 0 3 2019

ALJ Appeal Number: 1-8136495060

Appellant:   DEBRA M PARRISH
             788 WASHINGTON RD
             PITTSBURGH, PA 15228

## NOTICE OF DECISION

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 days of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

What if I disagree with the decision?

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision. If you are not already represented, you may appoint an attorney or other person to represent you.
How much time do I have to file an appeal?

The Medicare Appeals Council must receive your written appeal within 60 calendar days of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.
How do I file an appeal?

OMHA-1051T                         Page 1 of 4

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). Please do not submit your request for review using more than one method. Regardless of how you file your appeal, you must always send a copy of your written request for review to the other parties who received a copy of the decision.

If you are filing a written request for review, you may use the enclosed Request for Review (Form DAB-101), or you may write a letter containing the following:
- The Beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The Beneficiary's/enrollee's health insurance claim number;
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's dismissal;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

Filing by mail:

Mail your appeal and a copy of the enclosed decision to:
Department of Health and Human Services
    Departmental Appeals Board
    Medicare Appeals Council, MS 6127
    Cohen Building Room G-644
    330 Independence Ave., S.W.
    Washington, D.C. 20201

Filing by fax:

Fax your appeal and a copy of the enclosed dismissal to (202) 565-0227.
Filing by computer:
Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at https://dab.efile.hhs.gov/mod.
To file a new appeal using MOD E-File, you will need to register by:
(1)    Clicking Register on the MOD E-File home page;
(2)    Entering the information requested on the "Register New Account" form; and
(3)    Clicking Register Account at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at https://dab.efile.hhs.gov/mod/users/new. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:
(1) Logging into MOD E-File;
(2) Clicking the File New Appeal menu button on the top right of the screen;
(3) Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
(4) Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal – Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

(1) Request for Review;
(2) Appointment of Representative form (OMB Form 0938-0950);
(3) Copy of Administrative Law Judge or attorney adjudicator decision;
(4) Memorandum or brief or other written statement in support of your appeal; and
(5) Request to Withdraw your appeal

No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.

Filing by oral request (for expedited review only):

Oral requests for expedited review of a Part D decision may be made by telephone to (866) 365-8204. You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file. Please note that your request for review will only be expedited if the Part D drug has not already been furnished and the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

How will the Medicare Appeals Council respond to my appeal?
The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented Beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.
Questions?

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the

Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free) if you have questions about filing an appeal.

Enclosures: OMHA-152, Decision

Copies were sent to the following parties and Medicare Contractors:

C2C Innovative Solutions, Inc.
DME QIC Appeals–ALJ
P.O. Box 44006
Jacksonville, FL 32231-4006



**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
Irvine Field Office
Irvine, CA

| | |
|---|---|
| Appeal of: E. Banks | ALJ Appeal No.: **1-8136495060** |
| Beneficiary: E. Banks | Medicare: **PART B** |
| HICN: *****8912A | Before: **Bruce Kelton**<br>U.S. Administrative Law Judge |

## DECISION

After careful consideration of the evidence and arguments presented in the record and at the hearing, an UNFAVORABLE decision is entered in this matter.

### Procedural History

A Medicare claim was submitted to the Medicare Administrative Contractor (MAC) for the date of service, 1/25/2018, 3/12/2018 and 4/12/2018, for Electrical Stimulation Cancer Treatment (referred to as tumor treatment field therapy ("TTFT") that was provided to the above-listed Medicare Beneficiary. The claim was denied for payment at the initial determination and by redetermination by the MAC. (Exh. 1)

In response to the Appellant's appeal of the redetermination, the Qualified Independent Contractor (QIC) issued an unfavorable reconsideration on 9/15/2018. (Exh. 1)

The Appellant timely filed a request for hearing before an Administrative Law Judge (ALJ). The amount in controversy meets the jurisdictional requirement and is based on the billed amount. (Exh. 3)

Following due notice, a hearing was held by phone before the undersigned ALJ on 2/19/2019. (Exh. 4- Notice of Hearing; Hearing CD) The Appellant was represented by counsel, Debra Parrish, Esq. The Appellant agreed with the appeal issues stated by the ALJ. Appellant's witness, Timothy Park, RN, Novocare, Inc. ("Optune" device manufacturer) also provided testimony at the hearing. All documents were received without objection into the evidentiary record. (Hearing CD)

### Issues

1. Whether Medicare coverage requirements are met for the Electrical Stimulation Cancer Treatment, CPT code E0766, that is, whether payment can be made for those services under Title XVIII of the Social Security Act.

2. In the event that the claims are not payable under Title XVIII of the Act, do the limitation of liability provisions of section 1879 of the Act apply and, if so, to whom.

### Findings of Fact

The record establishes the following facts by a preponderance of the evidence:

The Beneficiary, a 72-year old male, received Electrical Stimulation Cancer Treatment (Tumor Treatment Field Therapy (TTFT) delivered by device, Optune device/NovoTTF-100A System, for treatment for glioblastoma. He was initially diagnosed with glioblastoma grade IV in September, 2009. He has received radiation therapy and concurrent chemotherapy from 10/08/09 to 11/18/09 followed by maintenance chemotherapy. MRI in February, 2010 indicated stable condition, followed by a new area of tumor progression as seen on an MRI of 9/20/2011. The Beneficiary's last chemotherapy was on 11/18/2014. He started to use the Optune device on 12/20/2013. (Exh. 2, pp 13, 24).

The medical record includes physician's notes from 2017 to 2018. The progress notes of 2/8/2018 indicates the Beneficiary has been stable without tumor recurrence. (Exh. 2, pp 1-31, in particular p 10, 23).

The letter of medical necessity indicates the Beneficiary has history of glioblastoma multiforme (GBM). Patients suffering from recurrent GBM has limited treatment options, and Optune is currently the only chronic treatment option with established survival benefit. (Exh. 2, pp 211-Letter of Medical Necessity from the Univ. of Alabama at Birmingham)

Optune/NovoTTF-100A System delivers Tumor Treatment Field Therapy (TTFT) that disrupts and corrupts the division of cancer cells and leads to the death of such cells. (Exh. 2, pp 101: NovoTTF-100A System product manual).

The Appellant billed the subject procedure, TTFT, with designated CPT code E0776. The MAC and the QIC denied coverage pursuant to Local Coverage Determination, LCD L34823 indicates TTFT as not reasonable and necessary. The LCD in place at the time of the subject services can be accessed by following this link: LCD L34823 (Exh. 1-Redetermination, Reconsideration).

The Proposed LCD 34823 which is currently in the Comment Period, can be accessed by following this link: Proposed LCD L34823; https://www.cms.gov/medicare-coverage-database/details/lcd-details.aspx?LCDId=34823&ver=14&DocID=L34823&bc=gAAAABAAAAAA& The proposed LCD provides coverage of TTFT for newly diagnosed Glioblastoma Multiforme (GBM) if it meets all the program requirements including "reasonable and necessary" criteria under the LCD. Tumor treatment field therapy (E0766) will be denied as not reasonable and necessary for the treatment of recurrent GBM.

## Legal Framework

I. Administrative Law Judge Review Authority

A. Jurisdiction

An individual who, or an organization that, is dissatisfied with the reconsideration of an initial determination is entitled to a hearing before the Secretary of the Department of Health and Human Services (HHS), provided there is a sufficient amount in controversy and a request for hearing is filed in a timely manner. Social Security Act (Act) § 1869(b)(1)(A).

In implementing this statutory directive, the Secretary has delegated his authority to administer the nationwide hearings and appeals system for the Medicare program to OMHA. See 70 Fed. Reg. 36386, 36387 (June 23, 2005). The ALJ's within OMHA issue the final decisions of the Secretary, except for decisions reviewed by the Medicare Appeals Council. Id.

In 2012, a hearing before an ALJ was only available if the remaining amount in controversy was $130 or more. See 42 C.F.R. § 405.1006(b)(1). The request for hearing is timely if filed within sixty days after receipt of the notice of the Qualified Independent Contractor's (QIC's) reconsideration. See 42 C.F.R. § 405.1002(a)(1).

B. Scope of Review

Under the Centers for Medicare and Medicaid Services' (CMS) implementation policy for the Medicare, Medicaid, and SCHIP Benefits Improvement and Protection Act of 2000 (BIPA), Pub. Law 106-554, Appellant. F, 114 Stat. 2763, 2763A-463, and the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA), Pub. Law 108-173, 117 Stat. 2066, all initial determinations by CMS-contracted carriers prior to January 1, 2006, are governed by the ALJ hearing procedures set forth at 20 C.F.R. §§ 404.929 through 404.961 and 42 C.F.R. § 405.855. See 70 Fed. Reg. 11420, 11424-26 (Mar. 8, 2005).

"The issues before the administrative law judge include all the issues brought out in the initial, reconsidered or revised determination that were not decided entirely in [the Appellant's] favor. However, if evidence presented before or during the hearing causes the administrative law judge to question a fully favorable determination, he or she will notify [the Appellant] and will consider it an issue at the hearing." 20 C.F.R. § 404.946(a).

"The administrative law judge may decide a case on the record and not conduct an oral hearing if [the Appellant] and all the parties indicate in writing that [they] do not wish to appear before the administrative law judge at an oral hearing." 20 C.F.R. § 404.948(b)(i).

C. Standard of Review

"The [Office of Medicare Hearings and Appeals]…is staff[de] with Administrative Law Judges who conduct 'de novo' hearings…." 70 Fed. Reg. 36386 (June 23, 2005); see also In re Atlantic Anesthesia Associates, P.C., MAC (June 2004) ("An ALJ qualified and appointed pursuant to the Administrative Procedure Act acts as an independent finder of fact in conducting a hearing pursuant to section 1869 of the Act. This requires de novo consideration of the facts and law.").

II. Principles of Law

A. Statutes and Regulations

Title XVIII of the Social Security Act ("the Act"), as amended, establishes a federally subsidized health insurance program ("Medicare") to be administered by the Department of Health and Human Services. Eligibility for Medicare benefits is determined under Title XVIII of the Act, 42 U.S.C. § 1801 et seq., and federal regulations set forth in Title 42 of the Code of Federal Regulations (C.F.R.).

Medicare Part A entitles a Beneficiary to reimbursement for a variety of costs associated with hospital, related post-hospital, home health services, and hospice care for individuals eligible for Medicare. Section 1812(a)(1). Medicare Part B establishes a voluntary program of supplemental medical insurance covering physicians' charges and other medical services. (See Sections 1831, 1832, and 1861(s); 42 C.F.R. § 410(40)(a)(2)).

Sections 1812 and 1813 of the Act establish the scope of benefits of the hospital insurance program under Medicare Part A. Sections 1813, 1814, 1815, 1816, and 1817 of the Act set forth the conditions of and limitations on payment for services under Part A of Medicare. Medicare Part A benefits include payment for hospital services.

Section 1833(e) of the Act specifies that claims for payment must be supported by sufficient information and documentation. The provider, supplier, or Beneficiary, as appropriate, must furnish to the intermediary or carrier sufficient information to determine whether payment is due and the amount of payment. See also 42 C.F.R § 424.5(a)(6).

Section 1862(a)(1)(A) of the Act provides that no payment may be made under Medicare Part A or Part B for any expenses incurred for items or services that are "not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." See also Section 1862(a)(1)(A) of the Act, 42 C.F.R. § 411.15(k)(1)).

Section 1879 of the Act provides that when Medicare coverage and payment is excluded pursuant to Section 1862(a)(1) of the Act, payment may nevertheless be made for items or services, if neither the Beneficiary nor the provider or supplier knew, and could not reasonably be expected to have known, that the items or services would not be covered or payable by Medicare. See also 42 C.F.R. § 411.406.

B. Policy and Guidance

Section 1871(a)(2) of the Act provides that no rule, requirement or statement of policy, other than a National Coverage Determination (NCD), can establish or change a substantive legal standard governing the scope of benefits or payment for services under the Medicare program unless it is promulgated as a regulation by CMS. However, although not subject to the force and effect of the law, CMS and its contractors, have issued policy and guidelines that describe criteria for coverage for selected types of medical services and supplies.

Also considered are the manuals and rulings issued by the Centers for Medicare and Medicaid Services (CMS) in implementing the Medicare program. Although not binding on the ALJ, the

respective manuals provide guidance in the administration of the Medicare program. Shalala v. Guernsey Memorial Hospital, 514 U.S. 87 (1995). The Court concluded that an agency manual section is a valid interpretive rule and also found that it is reasonable for the agency to follow it. Id. at 102.

Medicare Program Integrity Manual ("MPIM"), Pub. 100-08, Ch.13.1.1 provides that an LCD, as defined in §1869(f)(2)(B) of the Social Security Act (SSA), is a determination by a Medicare Administrative Contractor (MAC) respecting whether or not a particular item or service is covered on a contractor–wide basis in accordance with section 1862(a)(1)(A) of the Act. 1869(f)(2)(A) of the SSA outlines the process for Administrative Law Judge (ALJ) and Department of Appeals Board (DAB) review of LCDs. This process is known as the LCD Challenge Process. Procedures related to this challenge process are described in 42 Code of Federal Regulation (CFR) part426.

1869 (f)(2)(A) provides as follows:

(2) Local coverage determination.—

(A) In General.—Review of any local coverage determination shall be subject to the following limitations:

(i) Upon the filing of a complaint by an aggrieved party, such a determination shall be reviewed by an administrative law judge. The administrative law judge.—
(I) shall review the record and shall permit discovery and the taking of evidence to evaluate the reasonableness of the determination, if the administrative law judge determines that the record is incomplete or lacks adequate information to support the validity of the determination;
(II) may, as appropriate, consult with appropriate scientific and clinical experts; and
(III) shall defer only to the reasonable findings of fact, reasonable interpretations of law, and reasonable applications of fact to law by the Secretary.
(ii) Upon the filing of a complaint by an aggrieved party, a decision of an administrative law judge under clause (i) shall be reviewed by the Departmental Appeals Board of the Department of Health and Human Services.
(iii) The Secretary shall implement a decision of the administrative law judge or the Departmental Appeals Board within 30 days of receipt of such decision.
(iv) A decision of the Departmental Appeals Board constitutes a final agency action and is subject to judicial review.

42 CFR § 405.1062 provides for applicability of local coverage determinations (LCD) and other policies that are not binding on the Administrative Law Judge (ALJ) and Medicare Appeals Council (MAC) as follows:

(a) ALJs and the MAC are not bound by LCDs, LMRPs, or CMS program
guidance, such as program memoranda and manual instructions, but will give substantial deference to these policies if they are applicable to a particular case.
(b) If an ALJ or MAC declines to follow a policy in a particular case, the
ALJ or MAC decision must explain the reasons why the policy was not followed. An ALJ or MAC decision to disregard such policy applies only to the specific claim being considered and does not have precedential effect.
(c) An ALJ or MAC may not set aside or review the validity of an LMRP or LCD for

purposes of a claim appeal. An ALJ or the DAB may review or set aside an LCD (or any part of an LMRP that constitutes an LCD) in accordance with part 426 of this title.

<u>MPIM, Pub. 100-08, Ch. 13, Section 13.3 - LCD Reconsideration Process</u> (Rev: 854; Issued: 01-11-19; Effective: 09-26-18; Implementation: 01-08-19)

The LCD reconsideration process is a mechanism by which a beneficiary or stakeholder (including a medical professional society or physician) in the MAC's jurisdiction can request a revision to an LCD. The LCD reconsideration process differs from an initial request for an LCD in that it is available only for final effective LCDs. The whole LCD or any provision of the LCD may be reconsidered. In addition, MACs have the discretion to revise or retire their LCDs at any time on their own initiative.

<u>13.3.1 - Web site Requirements for the LCD Reconsideration Process</u>
(Rev: 854; Issued: 01-11-19; Effective: 09-26-18; Implementation: 01-08-19)
MACs shall add to their MAC Web sites information on the LCD Reconsideration Process. This information should be on the LCD home page of the MAC's Web site. It shall be labeled "LCD Reconsideration Process" and shall include:
• A description of the LCD Reconsideration Process; and
• Instructions for submitting LCD reconsideration requests, including postal, e-mail, and fax addresses where requests may be submitted.

<u>13.3.2 - Valid LCD Reconsideration Request Requirements</u>
(Rev: 854; Issued: 01-11-19; Effective: 09-26-18; Implementation: 01-08-19)
MACs shall consider all LCD reconsideration requests from:
• Beneficiaries residing or receiving care in a contractor's jurisdiction; and
• Providers doing business in a contractor's jurisdiction.
• Any interested party doing business in a contractor's jurisdiction.
MACs should only accept reconsideration requests for LCDs published as an effective final. Requests shall not be accepted for other documents including:
• National Coverage Determinations (NCDs);
• Coverage provisions in interpretive manuals;
• Proposed LCDs;
• Template LCDs, unless or until they are adopted and in effect by the contractor;
• Retired LCDs;
• Individual claim determinations
• Bulletins, articles, training materials; and
• Any instance in which no LCD exists, i.e., requests for development of an LCD.
If modification of the LCD would conflict with an NCD, the request would not be valid. The MAC should refer the requestor to the NCD reconsideration process. Requestors can be referred to http://www.cms.gov/DeterminationProcess/01_overview.asp#regs.
Requests shall be submitted in writing and shall identify the language that the requestor wants added to or deleted from an LCD. Requests shall include a justification supported by new evidence, which may materially affect the LCD's content or basis. Copies of published evidence shall be included. Any request for LCD reconsideration that, after MAC review, is determined to not meet these criteria is invalid. MACs have the discretion to consolidate valid requests if similar requests are received.

<u>13.3.3 - Process Requirements</u>

(Rev: 854; Issued: 01-11-19; Effective: 09-26-18; Implementation: 01-08-19)
The requestor shall submit a valid LCD reconsideration request to the appropriate MAC, following instructions on the MAC's Web site.
Within 60 calendar days of the day the request is received, the MAC shall determine whether the request is valid or invalid. If the request is invalid, the contractor shall respond, in writing, to the requestor explaining why the request was invalid. If the request is valid, the contractor shall follow the requirements below.
The MAC shall open the LCD and follow the LCD process as outlined in section 13.2 of this manual or include the LCD on the MAC's waiting list. The MAC shall respond, in writing, to the requestor notifying the requestor of the acceptance, and if applicable, wait-listing, of the reconsideration request.
Contractors shall keep an internal list of the LCD Reconsideration Requests received and the dates, subject, and disposition of each one.

### 13.4 - Challenge of an LCD
(Rev: 854; Issued: 01-11-19; Effective: 09-26-18; Implementation: 01-08-19)
In addition to creating the term "Local Coverage Determination" (LCD), section 1869(f) of the Social Security Act creates an appeals process for an "aggrieved party" to challenge LCDs/LCD provisions that are in effect at the time of the challenge. "Aggrieved party" is defined in regulation as a Medicare beneficiary, or the estate of a Medicare beneficiary, who is entitled to benefits under Part A, enrolled under Part B, or both (including an individual enrolled in fee-for-service Medicare, in a Medicare Advantage plan (MA), or in another Medicare managed care plan), and is in need of coverage for an item or service that would be denied by an LCD, as documented by the beneficiary's treating physician, regardless of whether the service has been received. An aggrieved party has obtained documentation of the need by the beneficiary's treating physician.
Contractors shall follow all LCD Challenge requirements outlined in 42 CFR part 426. As indicated in 42 CFR § 426.415 if appropriate, CMS may choose to participate as a party in the LCD Challenge process.

MPIM, Pub. 100-08, Ch. 13, Section 13.5.1 - General Requirements. The Medicare Coverage Database (MCD) is the central repository that houses proposed, and final LCDs, and LCD related articles.
• The MACs shall publish all proposed and final LCDs and LCD related articles on the MCD. The public may access the MCD at http://www.cms.gov/medicare-coverage-database.
• MACs must ensure the accuracy of the information entered into the MCD.
• If a MAC decides to have LCDs and related articles on their MAC web sites, then the MAC must link from their MAC website to the MCD.
MACs shall finalize or retire all proposed LCDs within a rolling year of publication date of the proposed LCD on the MCD (365 days). If an unusual circumstance occurs and the MAC wishes to request an exception to this requirement, they shall notify their COR and LCD BFLs at least 21 business days before the one year expiration date.
The MAC shall ensure that all LCDs do not conflict with all statutes, rulings, regulations, and national coverage, payment, and coding policies.

### 13.5.4 – Reasonable and Necessary Provisions in LCDs (Rev: 854; Issued: 01-11-19; Effective: 09-26-18; Implementation: 01-08-19)
An item or service may be covered by a contractor LCD if:

- It is reasonable and necessary under 1862(a)(1)(A) of The Act. Only reasonable and necessary provisions are considered part of the LCD.

Reasonable and Necessary

Contractors shall determine and describe in the LCD the circumstances under which the item or service is reasonable and necessary under 1862(a)(1)(A). Contractors shall determine if evidence exist to consider an item or service to be reasonable and necessary if the contractor determines that the service is:

- Safe and effective;
- Not experimental or investigational (exception: routine costs of qualifying clinical trial services with dates of service on or after September 19, 2000 which meet the requirements of the Clinical Trials NCD are considered reasonable and necessary); and
- Appropriate, including the duration and frequency that is considered appropriate for the item or service, in terms of whether it is:
  o Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition or to improve the function of a malformed body member;
  o Furnished in a setting appropriate to the patient's medical needs and condition;
  o Ordered and furnished by qualified personnel;
  o One that meets, but does not exceed, the patient's medical need; and
  o At least as beneficial as an existing and available medically appropriate alternative.

### 13.5.5 - Public Comment (Rev: 854; Issued: 01-11-19; Effective: 09-26-18; Implementation: 01-08-19)

MACs are required to provide a minimum of 45 calendar days for public comment on all proposed LCDs. MACs shall respond to all timely received public comments, and may group similar comments and responses in logical categories in the RTC article.

### 13.5.6 - Final Decision (Rev: 854; Issued: 01-11-19; Effective: 09-26-18; Implementation: 01-08-19)

MACs shall finalize or retire all proposed LCDs within a rolling year of publication date of the proposed LCD on the MCD (365 days). After the close of the comment period and the required meetings, the MACs shall publish a final LCD to the MCD. MACs shall link from their contractor website to the final LCD on the MCD. As stated earlier, the MAC shall also respond to all comments received, via the RTC article which shall be published on the MCD and be related to the LCD. The RTC article shall be displayed at the same time as the final LCD.

MACs shall notify the public that a final decision has been published and provide the Web link to the final decision. MACs may use several tools at their disposal to educate providers, including the "What's New Report" on the Medicare Coverage Database, setting up email listservs, or other 508 compliant and accessible means to inform stakeholders.

### 13.6 - LCD Record (Rev: 854; Issued: 01-11-19; Effective: 09-26-18; Implementation: 01-08-19)

The LCD record shall be maintained by contractors for a minimum of 6 years and 3 months from the date the LCD is retired. Contractors shall have a mechanism for archiving retired LCDs. This mechanism shall also allow the contractor to respond to requests and retrieve the LCD record. After 6 years and 3 months from the date the LCD is retired, the LCD record shall be destroyed. However, contractors shall not destroy the LCD record if it relates to a current investigation of litigation/negotiation; ongoing Workers' Compensation set aside arrangements; or documents which prompt suspicions of fraud and abuse of items or services. This will satisfy evidentiary needs and discovery obligations critical to the agency's litigation interests.

<u>MPIM, Pub. 100-08, Ch. 5, Section 5.7 – Documentation in the Patient's Medical Record</u>. For any DMEPOS item to be covered by Medicare, the patient's medical record must contain sufficient documentation of the patient's medical condition to substantiate the necessity for the type and quantity of items ordered and for the frequency of use or replacement (if applicable). The information should include the patient's diagnosis and other pertinent information including, but not limited to, duration of the patient's condition, clinical course (worsening or improvement), prognosis, nature and extent of functional limitations, other therapeutic interventions and results, past experience with related items, etc. If an item requires a CMN or DIF, it is recommended that a copy of the completed CMN or DIF be kept in the patient's record. However, neither a physician's order nor a CMN nor a DIF nor a supplier prepared statement nor a physician attestation by itself provides sufficient documentation of medical necessity, even though it is signed by the treating physician or supplier. There must be information in the patient's medical record that supports the medical necessity for the item and substantiates the answers on the CMN (if applicable) or DIF (if applicable) or information on a supplier prepared statement or physician attestation (if applicable).

The proposed LCD L 34823, in pertinent, provides as follows (MCD is located at http://www.cms.gov/medicare-coverage-database):

INITIAL COVERAGE FOR NEWLY DIAGNOSED GLIOBLASTOMA MULTIFORME:

Tumor treatment field therapy (E0766) is only covered for the treatment of newly diagnosed Glioblastoma Multiforme (GBM) when all of the following criteria are met:

1. The beneficiary has histologically confirmed (World Health Organization (WHO) grade IV astrocytoma), newly diagnosed, supratentorial GBM; and,
2. The beneficiary has received initial treatment with maximal debulking surgery, followed by chemotherapy and radiotherapy; and,
3. Tumor treatment field therapy is initiated within 7 weeks from the last dose of concomitant chemotherapy or radiotherapy; and,
4. The beneficiary is receiving care for GBM at a National Cancer Institute-designated Cancer Center, National Cancer Institute-designated Comprehensive Cancer Center, or National Cancer Institute-designated Cancer Research Network facility; and,
5. The beneficiary has no evidence of progression by Response Assessment in Neuro-Oncology (RANO) criteria; and,
6. The beneficiary has a Karnofsky Performance Score (KPS) of at least 70; and,
7. The beneficiary will use TTFT for at least 18 hours/day.

If all of the coverage criteria above are not met, claims for code E0766 will be denied as not reasonable and necessary.

CONTINUED COVERAGE FOR NEWLY DIAGNOSED GBM BEYOND THE FIRST THREE MONTHS OF THERAPY:

Continued coverage of TTFT (E0766) beyond the first three months of therapy requires that no sooner than the 60th day but no later than the 91st day after initiating therapy, the treating practitioner must conduct a clinical re-evaluation and document that the beneficiary is continuing to use and is benefiting from TTFT.

Documentation of clinical benefit is demonstrated by:

1. Face-to-face clinical re-evaluation by the treating practitioner; and,
2. Objective evidence of adherence to the use of TTFT, reviewed by the treating practitioner. Adherence to therapy is defined as the use of TTFT for at least 18 hrs/day (see criterion 7 above).

If the above criteria are not met, continued coverage of TTFT will be denied as not reasonable and necessary.

If the practitioner re-evaluation does not occur until after the 91st day but the evaluation demonstrates that the beneficiary is benefiting from TTFT as defined in criteria 1 and 2 above, continued coverage of TTFT will commence with the date of that re-evaluation. See Policy Specific Documentation Requirements in the LCD-related Policy Article, located in the Related Local Coverage Documents section of this LCD, for information about KX modifier use.

RECURRENT GBM

Tumor treatment field therapy (E0766) will be denied as not reasonable and necessary for the treatment of recurrent GBM.

OTHER USES

The use of TTFT for any indications other than newly diagnosed GBM will be denied as not reasonable and necessary.

GENERAL

A Detailed Written Order (DWO) (if applicable) must be received by the supplier before a claim is submitted. If the supplier bills for an item addressed in this policy without first receiving a completed DWO, the claim shall be denied as not reasonable and necessary.

An item/service is correctly coded when it meets all the coding guidelines listed in CMS HCPCS guidelines, LCDs, LCD-related Policy Articles, or DME MAC articles. Claims that do not meet coding guidelines shall be denied as not reasonable and necessary/incorrectly coded.

Proof of delivery (POD) is a Supplier Standard and DMEPOS suppliers are required to maintain POD documentation in their files. Proof of delivery documentation must be made available to the Medicare contractor upon request. All services that do not have appropriate proof of delivery from the supplier shall be denied as not reasonable and necessary.

**Analysis**

I. <u>The Tumor Treatment Field Therapy (TTFT) is not covered for treatment of recurrent glioblastoma multiforme (GBM)</u>

The Medicare Administrative Contractor (MAC) denied the claim on the basis that the service billed does not have an LCD that extends coverage for TTFT. The applicable LCD L34823 deems Tumor treatment field therapy (E0766) as not reasonable and necessary for recurrent GBM. The QIC upheld

denial of coverage on the same basis. The QIC further found that currently published studies in the medical literature do not clearly document the effectiveness of this device. Therefore, the QIC found that there is insufficient documentation to quantify the effects of the device at issue. In support of its unfavorable decision, the QIC cited to LCD L34823.

The Appellant argues that patients with recurrent glioblastoma have an expected survival of approximately six months based on medical literature. The Beneficiary attributes that his survival has exceeded this time period due to treatment by TTFT via the Optune device. The Appellant further argues that the published, peer-reviewed literature support improvement in clinical outcome of patients who receive TTFT for their glioblastoma. The treatment is covered by large national payers.

Unfortunately, Medicare does not cover all treatments that may be beneficial to each patient. Medicare follows its coverage guidelines, and the ALJ must give serious deference to the LCD that is effective on the date of service. Pursuant to MPIM, Pub. 100-08, Ch. 13, Section 13.5.1, the ALJ has consulted the Medicare Coverage Database (MCD), the central repository that houses proposed, and final LCDs, and LCD related articles for the most current development on the LCD L 34823 (MCD is located at http://www.cms.gov/medicare-coverage-database.) LCD L34823 that was in place during the dates of service excludes coverage of TTFT. The medical literature that the Appellant has submitted does not justify the ALJ to depart from applying the effective LCD. The LCD clearly states that "Treatment field therapy (E0766) will be denied as not reasonable and necessary." The proposed LCD that is presently in the Comment Period is not considered in this case because it has not been effectuated as of date. The ALJ is required to give substantial deference to the applicable LCD pursuant to 42 CFR § 405.1062. As such, the LCD is clear in excluding coverage of TTFT, so the ALJ must find the claim cannot be covered by Medicare under the LCD L 34823.

II. Limitation of Liability of Section 1879 does not relieve Appellant's financial responsibility.

When reimbursement for a Medicare claim is denied, consideration must also be given to whether payment may nonetheless be made per Section 1879 of the Social Security Act. Section 1879 provides for waiver of liability when services at issue are found to be "not medically reasonable and necessary," or "custodial in nature." In order to allow waiver of liability, Section 1879 requires that: (1) the item or service be furnished under assignment, and (2) neither the Beneficiary, nor the provider/supplier knew or reasonably could have been expected to know that such services would be excluded from Medicare coverage.

Here, the Appellant knew or could reasonably have been expected to know the services provided to the Beneficiary would not be covered under Medicare. The record shows that the Appellant was aware of the Medicare guidelines and requirements because a Provider is presumed to have knowledge of published Medicare coverage rules and regulations, CMS Rulings, Medicare coverage policies in bulletins or websites, and acceptable standards within the local community pursuant 42 C.F.R. §§ 489.2 and 411.406. In this case, the Appellant is in the business of providing medical services to Medicare beneficiaries. Therefore, the Appellant should have known that reimbursement would not be allowed unless all Medicare coverage criteria are met and billed at the appropriate level of care.

On the other hand, the Beneficiary did not know and could not have expected to know the services were excluded from coverage. Appellant did not notify the Beneficiary in writing before the services

were furnished that Medicare would not likely pay for the services based on the given circumstances. There is no evidence that the Beneficiary signed an Advance Beneficiary Notice.

For the reasons stated, Section 1879 does not relieve Appellant's financial liability of the non-covered claim, and the Beneficiary cannot be held responsible for the denied charges.

## Conclusions of Law

It is the decision of the undersigned ALJ that the claim for E0766/Electrical Stimulation Cancer Treatment (aka Tumor Treatment Field Therapy (TTFT)), for date of service of 1/25/2018, 3/12/2018 and 4/12/2018 are not medically reasonable and necessary. Payment is therefore not allowed by Medicare. The decision of the QIC is UPHELD.

The waiver of liability provisions of section 1879 of the Act does not apply to relieve the Provider's financial liability. The Provider remains responsible for the denied charges.

SO ORDERED:

Dated: JUN 0 3 2019

Bruce J. Kelton
U.S. Administrative Law Judge